IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

HEATHER WELDY,

                       Plaintiff,

     v.                                            OPINION and ORDER

FRANK BISIGNANO,[1]                                      24-cv-228-wmc
Commissioner of Social Security,

                       Defendant.

Plaintiff Heather Weldy, who is representing herself, seeks judicial review of a final decision denying her claim for disability benefits under the Social Security Act. 42 U.S.C. § 405(g). Plaintiff appears to argue that her case should be reversed and remanded because the Administrative Law Judge ("ALJ") erred in finding that the placement of a responsive neurostimulator ("RNS") device and anti-seizure medication have sufficiently alleviated the symptoms of her epilepsy to make her employable.[2] (Dkt. #7.) For the reasons discussed below, the court finds plaintiff has not shown any basis for reversing the ALJ's

---

[1] The court has amended the caption to reflect Bisignano's appointment as Commissioner. Fed R. Civ. P. 25(d).

[2] NeuroPace's "RNS System constantly monitors brainwaves, detects unusual activity that may lead to a seizure, and responds in real-time by sending brief pulses to disrupt this unusual activity." NeuroPace, https://www.neuropace.com/patients/neuropace-rns-system/#FAQ (accessed Jun. 12, 2025). More specifically, plaintiff appears to criticize the finding of a new neurologist, who she waited to consult until July 14, 2024, claimed that plaintiff abused him, and was unaware of the proper care required after the RNA placement, somehow requires a remand. However, those findings were obviously not before the ALJ who issued her decision in September of 2023, nor do they appear to undermine the ALJ's findings as explained below.

finding that she no longer met the listing for epilepsy because she had no record of seizures since February 17, 2022. Therefore, the denial of benefits must be affirmed.

## FACTS

### A. Background

The Social Security Administration ("SSA") originally found plaintiff disabled as of August 9, 2009, when she was 25 years old, after meeting the criteria of the then-current Listing 11.03 for non-convulsive epilepsy.[3] (AR 12, 15, 78-82.) In June 2014, however, the agency made an initial determination that plaintiff's disability had stopped. (AR 125-27.) Still, upon reconsideration, SSA issued a finding on June 2, 2015, that plaintiff's disability (epilepsy) had in fact continued since August 2009 (AR 12, 137-39),[4] while warning plaintiff that her claim would be reviewed from time-to-time to see if she remained eligible for benefits based on disability.

In November 2017, a physician surgically installed an RNS device to alleviate plaintiff's epilepsy symptoms. (AR 15, 908.) Almost four years later, in September 2021, the agency began a continuing disability review of plaintiff. (AR 354.) Further, as of February 17, 2022, the state agency again made an initial determination that plaintiff, who was by then 38 years old, was no longer disabled based on her symptom improvement since

---

[3] Section 11.00 for neurological disorders was updated on September 28, 2016, rendering Listing 11.03 obsolete as of that date. (AR 15; https://secure.ssa.gov/apps10/poms.nsf/lnx/0434131013.) Since that date, epilepsy has been evaluated under Listing 11.02. *See* https://www.ssa.gov/disability/professionals/bluebook/11.00-Neurological-Adult.htm (accessed Jun. 12, 2025).

[4] This June 2, 2015 decision date is known as the "comparison point decision" or "CPD." (AR 14.)

the placement of the RNS. (AR 91-96.) Therefore, SSA gave notice that it was ceasing plaintiff's benefits within two months because she was no longer disabled. (AR 141-43.)

Plaintiff sought reconsideration of that decision (AR 144-49), but the agency again found plaintiff was no longer disabled as of February 17, 2022 (AR 97-106). Next, in October 2022, a hearing officer also found that plaintiff's disability had stopped by February 17, 2022. (AR 171-79.) Plaintiff then requested a hearing before an ALJ. (AR 185.) ALJ Guila Parker held that hearing on May 24, 2023, during which plaintiff and a vocational expert testified, then issued the decision that is the subject of this appeal. (AR 12.)

### B. ALJ'S September 2023 Decision

The ALJ agreed plaintiff's disability ended on February 17, 2022, and she had not met or medically equaled the listing for epilepsy since that date. (AR 12-31.) In reaching this conclusion, the ALJ principally relied on a December 10, 2021 progress note entered by plaintiff's treating neurologist, Dr. Elizabeth Felton, stating that plaintiff "has not had any definite seizures, although there has been some interictal activity," since the RNS placement procedure. (AR 15 (quoting AR 1015).) In addition, plaintiff completed two function reports in January and May 2022, stating that she was driving. (AR 16 (citing AR 349, 361).) Finally, during a July 13, 2022, consultative evaluation ordered by SSA, plaintiff reported to Dr. Kurt Weber that she had not had a seizure episode since 2019, and there were no reports of seizure activity or seeking emergency treatment for a

breakthrough seizure since June 2, 2015, the comparison point decision date. (AR 15 (citing AR 1114).)

The ALJ also considered plaintiff's additional severe impairments since February 17, 2022, including: status post-responsive neurostimulation placement secondary to epilepsy; Raynaud's phenomenon; neurocognitive disorder; and anxiety disorder. (AR 16, 18.) Although finding that none of these additional impairments met or medically equaled any listed impairment, the ALJ did restrict plaintiff to light work with numerous postural, environmental, and mental limitations. (AR 24-25.) Citing the vocational expert's testimony, the ALJ ultimately found that even though plaintiff had no past relevant work, she could perform a significant number of jobs in the national economy, such as cleaner, marker, and routing clerk. (AR 29-31.) Therefore, the ALJ concluded that plaintiff's disability ended on February 17, 2022, and she had not become disabled again since that date. (AR 31.) The Appeals Council denied plaintiff's request for review on February 13, 2024 (AR 1-4), making the ALJ's decision the final decision of the Commissioner.

OPINION

The question before this court on review is whether the ALJ's decision is supported by "sufficient evidence to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). The sufficient evidence standard requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*. The ALJ must also identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate factual determination. *Moon v. Colvin*, 763 F.3d 718, 721

4

(7th Cir. 2014). On appeal, this court cannot reconsider facts, re-weigh the evidence, decide questions of credibility, or otherwise substitute its own judgment for that of the ALJ. *See L.D.R. v. Berryhill*, 920 F.3d 1146, 1152 (7th Cir. 2019); *Clifford v. Apfel*, 227 F.3d 863, 869 (7th Cir. 2000). Thus, even where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the Commissioner. *Edwards v. Sullivan*, 985 F.2d 334, 336 (7th Cir. 1993). This court's review is further limited to the ALJ's assessment of plaintiff's "condition as it existed at or prior to the time of the administrative hearing" in 2023. *Greenwell v. Saul,* 811 F. App'x 368, 370 (7th Cir. 2020), *reh'g denied* (July 14, 2020), *cert. denied*, 141 S. Ct. 597 (2020) (citing *Schmidt v. Barnhart*, 395 F.3d 737, 742 (7th Cir. 2005)).

Having waited until July of 2024 to see a new neurologist, plaintiff's sole claim on appeal appears to be that this neurologist did not understand her RNS device. Construing plaintiff's filings generously, as this court must for an unrepresented plaintiff, *Greenwell*, 811 F. App'x at 370, the court understands her to be challenging the ALJ's finding that the placement of the RNS device, in combination with anti-seizure medication, had controlled her seizures to the point that she was not disabled as of February 17, 2022. Along with her initial, one-page brief, plaintiff submitted more than 100 pages of documents consisting of general, non-symptom specific correspondence from NeuroPace, the Wisconsin Department of Workforce Development, her former neurologist (Dr. Christopher Anderson), and her new neurologist's administrative staff (dkt. ##7-1 to 7-5); medical records related to her RNS device, dated March 2023 to July 2024 (dkt. #7-6); a child protective service report (dkt. #7-7); a flash drive that plaintiff says contains a recording

5

of a physician yelling at her and making her confused (dkt. #7-8); and a RNS patient manual from NeuroPace (dkt. #7-9). However, neither her short brief nor any of the attached documents show that the ALJ erred in concluding that her condition had improved to the extent that she had not reported a seizure since 2019. In fact, included in the new medical records is a July 2024 neurology report stating that plaintiff's condition is much improved and that she is seizure free. (Dkt. #7-6, at 14.)

Plaintiff also argues for the first time in her 99-page, handwritten reply brief (dkt. #9) that she should nevertheless be found disabled based on the anxiety and other physical symptoms she continues to experience after placement of the RNS device and its long-term maintenance, such as sensitivity to fluorescent lighting and pain in her skull. (Dkt. #9, at 1-5; *see also* dkt. #7-6, at 21-24 (reports of similar symptoms to Dr. Anderson).) The court does not minimize these ongoing challenges, but neither did the ALJ, who expressly acknowledged that while "the record presents the claimant's seizure disorder well controlled since RNS placement," this "does not necessarily mean the problem had resolved and the possibility of breakthrough seizures should be considered." (AR 16.) The Social Security benefits program is concerned with the residual "ability to engage in full-time gainful employment" despite those challenges. *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005). To account for plaintiff's ongoing challenges, therefore, the ALJ properly arrived at a residual functional capacity ("RFC") assessment that restricts plaintiff to a limited range of light work. (AR 16.) Indeed, as defendant notes, the ALJ's RFC findings were *more* restrictive than those assessed by the state-agency physicians, Drs. Pat Chan and Mina Khorshidi, both of whom opined that plaintiff's improvement with the RNS device

6

allowed her to perform a *full* range of medium or light work.  (AR 28 (citing AR 94-95, 102-03).)  *Cf. Crowell v. Kijakazi*, 72 F.4th 810, 817 (7th Cir. 2023) (affirming ALJ's reliance on persuasive state-agency medical consultants' past administrative medical findings); *Rice v. Barnhart*, 384 F.3d 363, 370 (7th Cir. 2004) ("More importantly, there is no doctor's opinion contained in the record which indicated greater limitations than those found by the ALJ.").

Finally, plaintiff does not contend that any of the evidence considered by the ALJ in determining her impairments prevented her from performing the reasonably available, full-time work noted by the VE.  Instead, plaintiff's reply brief focuses on her disagreement with how the ALJ weighed the evidence.  The same is true of the numerous other records that plaintiff submitted long after her appeal came under advisement by this court.  (Dkt. #17 (300 pages of medical records regarding various past conditions and doctor visits occurring a year or more after the ALJ's decision); dkt. #18 (eviction and other non-treatment notices).)  Importantly, plaintiff has failed to explain how these records, which are largely irrelevant to the disability determination she is appealing, show that the ALJ's decision was unsupported by substantial evidence or constitute any reversible error in the ALJ's decision or handling of plaintiff's claim.  *See Greenwell,* 811 F. App'x at 370 (*Pro se* claimant cannot prevail merely by describing "mental and physical impairments and how they affect [her] daily life and render [her] unable to work.").

To the contrary, the ALJ's discussion in this case is thorough, and her conclusions are reasonably supported by the evidence, and plaintiff also offers no additional, evidence-based restrictions that the ALJ should have included were she directed to revisit plaintiff's

7

claim on remand. *See Sosh v. Saul*, 818 F. Appx 542, 546 (7th Cir. 2020) (citing *Loveless v. Colvin*, 810 F.3d 502, 508 (7th Cir. 2016)) ("A claimant who does not identify medical evidence that would justify further restrictions is not entitled to remand.").[5] Accordingly, this court must uphold the ALJ's decision.

ORDER

IT IS ORDERED that the decision denying disability benefits to plaintiff Heather Weldy is AFFIRMED. The clerk of court is directed to enter judgment in favor the Commissioner and close this case.

Entered this 15th day of December, 2025.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge

---

[5] While plaintiff has submitted some records of more recent treatment and evaluations from 2024 and 2025, these records are not relevant to her application under appeal. Indeed, if plaintiff believes she "has developed additional impairments, or [her] impairments have worsened" since the application under review, she may submit a new application for benefits. *Greenwell*, 811 F. App'x at 370 (quoting *Getch v. Astrue*, 539 F.3d 473, 484 (7th Cir. 2008)).